ESTATE OF HILTON W. GOODWYN, Deceased, STATE-PLANTERS BANK OF COMMERCE AND TRUSTS and HILTON W. GOODWYN JR., Co-Executors, and HALLIE M. GOODWYN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Goodwyn v. Commissioner
Docket No. 1649-67
United States Tax Court
T.C. Memo 1976-238; 1976 Tax Ct. Memo LEXIS 168; 35 T.C.M. (CCH) 1026; T.C.M. (RIA) 760238; July 29, 1976, Filed Abraham Homer,John W. Pearsall and John W. Pearsall, III, *170 for the petitioners. John C. Calhoun,Robert T. Hollohan, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: [1]
Docket No. 1649-67 Taxable
Deficiency Year
Tax § 6654(a) § 6653(a)
1956
$167,880.59
$79.38
$ 8,394.03
1957
212-480.39
10,624.02
1958
216,282.28
10,814.11
1959
248,351.08
12,417.55
1960
296,415.64
14,820.78
1961
423,954.78
21,197.74
1962
134,102.17
6,705.11
As a result of concessions, the issues remaining for decision are as follows: (1) Whether the income of trusts of which decedent was the sole grantor is to be attributed to him for taxable years prior to his death. (2) Whether the income of *171 trusts of which Mrs. Goodwyn was grantor is to be attributable to petitioners for the taxable periods prior to decedent's death. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto, insofar as they have been determined to be admissible, are incorporated herein by this reference. Hilton W. Goodwyn, Sr. (hereinafter variously referred to as "decedent" or "Goodwyn") died on July 27, 1962, at the age of 84 years. He had been in ill health for at least two years prior to his death. He was survived by his widow, Hallie M. Goodwyn, whom he had taken as his second wife on November 16, 1921; his natural son, Hilton W. Goodwyn, Jr.; and an adopted son, Robert A. Goodwyn. A third son, James H. Goodwyn, predeceased Hilton W. Goodwyn, Sr. Hilton W. Goodwyn, Jr., and State-Planters Bank of Commerce and Trusts were appointed executors of the Estate of Hilton W. Goodwyn, Sr., on August 10, 1962. Petitioners Hilton W. and Hallie M. Goodwyn, filed joint income tax returns for the taxable years 1956 through 1962. Hallie Goodwyn resided in Richmond, Virginia, at the time the petition herein was filed. The decedent lived most *172 of his adult life in Richmond, Virginia, commencing the practice of law in that city in the early 1900's. During the course of his early practice, Goodwyn represented numerous clients in the collection of accounts and began to develop his activities in the area of real estate, organizing Brokerage and Realty Corp., chartered in the State of Virginia on February 21, 1919, primarily to serve as his nominee or "street name." Brokerage and Realty Corp. was formally dissolved on March 14, 1945. For a considerable number of years prior to his death, Goodwyn held licenses as a real estate broker and as an attorney. However, his practice as an attorney came to be confined to the investigation, inception, preparation and supervision of real estate transactions and the legal necessities incident thereto. Decedent's attentions to the accumulations of mortgage paper and contractual relationships were, of necessity, constant. At the time of his death, Goodwyn employed approximately ten persons who dealt with the public and performed bookkeeping functions for him. Richards and Russell TrustsTrusts created by Hilton W. Goodwyn
By deed dated January 9, 1943, Brokerage and Realty *173 Corp. of Richmond, Virginia, acting on behalf of the decedent as owner, transferred to the decedent and N. B. Goodwyn, brother of the decedent, as trustees, certain real properties located in or adjacent to the City of Richmond, Virginia, an undivided one-third interest to be held in trust for the use and benefit of Hilton W. Goodwyn, Jr., an undivided one-third interest to be held in trust for the use and benefit of Robert A. Goodwyn, and an undivided one-third interest to be held for the use and benefit of James Henderson Goodwyn, sons of the decedent, upon the following terms and conditions: 1. They [the trustees] shall have full power, to administer and collect the revenue from the said properties and full power to sell and reinvest the same as already indicated and full power to pay out the proceeds, both principal and income, to or for the benefit of the said Beneficiary or to his issue, if any, in case of his death, but the said Trustees shall not in any event apply any part of the income of this trust to the payment of any premiums on any insurance policies on the life of either of the said Trustees, and shall have no right to use any of the funds of the said trust, either *174 principal or income for the private or personal benefit of either one of the said Trustees or to discharge any obligations or duties of the said trustees. 2.That they shall until the death of H. W. Goodwyn, the father of the Beneficiary, pay out of the income as well as the corpus or capital of this trust, that is to say, shall have full authority to make the payments hereinafter indicated either from the income or curpus [sic] as they may see fit and they are authorized to make payments as aforesaid from the sums arising from the said trust as aforesaid to the said Beneficiary or his issue in the case of his death, either to the said Beneficiaries or for his or their benefit in such amounts and at such times as the said Trustees may consider proper, it being the intention of this instrument to give them full and complete powers and discretion in making such payments and no person shall have a right to question their discretion or judgment except that the said payments shall be subject to the limitations already set forth. 3. After the expiration of the said period of two years after the death of the said H. W. Goodwyn, Sr., the principal and income remaining from the said *175 property shall be paid and distributed to and among such persons as hereinafter indicated as Hallie M. Goodwyn, (the mother of the said beneficiary) may have appointed in writing to receive the same and if at that time she shall not have made a valid appointment, then the said property and funds remaining therefrom shall be paid and turned over to the Beneficiary under this trust or his issue or heirs (provided of course if he is not of age at the time the trust should be continued until he or they are of age) the said power of appointment to the said Hallie M. Goodwyn is intended for the purpose of using her good offices as well as her love and affection for the benefit of all persons interested and to that end she is authorized to make and revoke such appointment and make new appointments from time to time as she may see fit and of course she may by such appointments, if she sees fit to do so, continue the said trust just as it is and she shall have a right by such appointments to finally dispose of the residue of the said property; but with the further limitations that she shall not at any time or in any event ever be entitled to anything in her own right under this trust, and the *176 right to make such appointments by said Hallie M. Goodwyn must be exercised within the two year period and not later than two years after the death of the said Hilton W. Goodwyn, Sr., and no part of the said property or income shall be appointed by her to any person except the brothers or sisters of said Hilton W. Goodwyn, Sr. or their issue, the brothers or sisters of herself or their issue, or the children of said Hilton W. Goodwyn, Sr. 4. In the event either of the Trustees shall die or become disqualified or decline to act as Trustee under this deed, then his successor may be appointed by the majority vote of the brothers and sisters of the said H. W. Goodwyn, Sr., the said brothers and sisters living at the time, who may make such appointments in writing; and until such appointment is made, the surviving Trustee shall act with full power and authority under this trust. And any statement in writing or recital in the deed by the said acting Trustee shall be sufficient proof that the other Trustee has become disqualified or has declined to act. Any vacancy in the office of the said Trustee may be filled from time to time by the majority vote of such brothers and sisters as *177 aforesaid. Such Trustees appointed as aforesaid shall have the same power and authority as outlined in this agreement. By deed dated January 4, 1944, Brokerage and Realty Corp. of Richmond, Virginia, acting on behalf of the decedent as owner, transferred to the decedent and N. B. Goodwyn, brother of the decedent, as trustees, certain additional real properties located in Richmond, Virginia, an undivided one-third interest to be held in trust for each of the beneficiaries of the trusts created by deed dated January 9, 1943, incorporating therein the terms and conditions of said prior trust. In addition thereto, the deed of January 4, 1944, provided as follows: a. The said Trustees shall follow as nearly as practicable the regular rules and practices usually applied in the administration of the regular traditional trusts by chancery and probate courts but shall not be limited in making investments to regular statutory requirements and shall have authority to sell the said properties and re-invest [sic] the same in such securities as they may consider wise and proper and for the most efficient administration of the said several trusts and shall not be obligated in any event *178 for any loss on any securities caused by error in judgment in any event. a-1 But it is expressly understood that no Trustee under this deed, or substituted Trustee, shall have any right to exercise any power of appointment of any of the said property in favor of himself, his estate, the creditors of his estate or in any manner by which Trustee might receive any benefit from the exercise of such power. b. They shall not engage in any business or make or obtain any loans except so far as may be incidental and necessary for an efficient administration of the said several trusts and to obtain satisfactory amortizing mortgages. And that their activities shall be limited for the most part to collecting the revenue from the said properties and keeping the proceeds of the said properties re-invested [sic] and to this end they shall have a right to anticipate the said revenues in order to take advantage of opportune investments. c. The beneficiaries under the said several trusts shall have no voice or control over any of the affairs of the same. d. If the Trustees under the said several trusts shall find it more economical to do so or more convenient in the handling of the *179 said affairs, they shall have a right to keep all the funds and properties of these trusts along with all the funds and properties of any other trusts that they may have to administer and have a right to keep the same on the same books and accounts along with the funds of any other such trusts, but they shall be required and shall be expected to keep all of the said properties funds, both receipts and disbursements clear and plainly earmarked and identified so that all such funds and items can be readily and conviently [sic] segregated at any time so that the Trustees may be in a position to prepare a clear and concise statements, [sic] showing all receipts and disbursements on account of the said several trusts and the income, principal and other facts and particulars that may be necessary and proper for them to show. It is further understood that the 3 trusts created by this instrument are separate from each other and are entirely separate from all other trusts. e. The said grantor hereby orders and directs that all the shares of income and principal and that all of the payments, items and amounts for the various beneficiaries already set forth and provided shall be for *180 the use and benefit, maintenance and support of the several and respective beneficiaries under these several trusts as already set out, and shall not be in any way or manner subject or liable to their, or either of their anticipation, sale, pledge, debts, contracts, engagements or liabilities, and not subject or liable to attachment or execution or sequestration under any legal or equitable or other process. It being the intention of the grantor to take advantage of the provisions of Section 5157 of the Code of Virginia. f. The Trustees will of course be entitled to a reasonable compensation for their services, and they may find it to the benefit of the beneficiaries to use the services for the present of H. W. Goodwyn, Attorney, the grantor herein, if he is willing to serve as he is familiar with the properties and would be expected to take an active personal interest in the matter because of his affection for the beneficiaries. But of course the Trustees have full authority to use such agents or attorneys as they may see fit. g. That the said Trustees shall have the power to decide which items of moneys or properties received by them under this trust shall constitute income *181 and which shall constitute corpus or principal and they shall also have full authority to compromise, adjust and settle any controversy that may arise in connection with any of the said trust property. By deed dated June 8, 1943, Brokerage and Realty Corp. of Richmond, Virginia, acting on behalf of the decedent as owner, transferred to Hallie M. Goodwyn, wife of the decedent, and N. B. Goodwyn, brother of the decedent, as trustees, certain real properties located in the City of Richmond, Virginia, a one-tenth interest to be held in trust for the use and benefit of Grace G. Wrenn, Nannie M. Goodwyn, James H. Goodwyn, Nathaniel B. Goodwyn, Sr., Henry H. Coleman, Joseph R. Johnson, James W. Boisseau, Hallie M. Goodwyn, Sue Shelton, and Elizabeth J. Silver, respectively, upon the following terms and conditions: (1) And the said Trustees shall have free and unlimited discretion to handle, administer, sell, collect, invest and reinvest the said property and the proceeds of the same; and shall have power to make all necessary deeds or contracts to convey or encumber the said property; and to employ all necessary agents and attorneys and pay the expenses of the same out of this trust *182 and are authorized to pay and to use the undivided interest of each beneficiary and the proceeds of the same for such beneficiary and to pay the same to or for the use of the said beneficiaries at such times and in such amounts as the said Trustees shall consider proper. And any deed made by the said Trustees or either of them with the certification as to the failure of the other Trustees to join as hereinafter indicated shall pass good title to any of the said property and no purchaser of the said property or lender on the said property shall be obligated to see to the application of the purchase money or loan money. (2) But the powers of the said Trustees and the limitations upon the said Trustees are specifically limited and circumscribed as follows: a. The Trustees shall not in any event have the right to pay out any part of the proceeds of any of the said trust either principal or income for the benefit of the grantor of the said trusts or on account of any obligations of the said grantor of the said trusts; or to discharge any legal duty or obligation of the said grantor; or to pay any premiums, dues or charges on any life insurance policies on the life of the said grantor.
*183 b. Each and all of the said 10 several and separate trusts already indicated shall be irrevocable and neither the said Trustees nor any or all of the said beneficiaries shall have any right or power to revoke any of the said several and separate trusts in any event or for any purpose. c. That none of the income or principal of the said property conveyed to the said Trustees for the said 10 several and separate trusts shall ever at any time or in any event revert to the grantor or revest in him and that neither the Trustees nor any or all of the said beneficiaries shall have any power whatever to revert or revest any portion of the said properties, either principal or income in the grantor of the said trusts. (3) That so long as the said several and separate trusts indicated are administered by the present Trustees already named or either of them that their powers and discretion in making payments to the said several beneficiaries under the said several and separate trusts shall continue, that is to say that they may make such payments to said Beneficiaries from the said several and separate trusts either principal or income and either directly to the said beneficiary or for *184 their use and benefit at such times and in such amounts as they may consider proper. But should any Trustee or Trustees at a future date be substituted as hereinafter indicated in the place of the said Trustees already named then the new or substituted Trustee shall pay to each of the beneficiaries, either quarterly or semiannually as the Trustee may decide the income from the said several and separate trusts, that is to say, each beneficiary shall receive 1/10th of the income on the said property but the said trusts shall still continue to be several and separate, that is to say, 10 separate trusts. And in addition to paying the said income periodically as indicated the said substituted Trustees shall also, if they feel that the needs and conditions of such beneficiaries require it, also pay from the principal of the 10 beneficiaries separate trusts an amount up to $150.00 seme-annually [sic] or so much thereof as the Trustees shall feel that the needs and conditions of such beneficiaries shall require. (4) In the event that either of the Trustees shall die or become disqualified or decline to act as Trustees under this deed, then his successor may be appointed by a majority *185 vote of the following persons in whom the grantor of this trust has most implicit confidence, or such of those that may be living and willing to act at that time: Hallie M. Goodwyn, Richmond, Virginia, wife of grantor; Robert E. Peyton, Attorney at Law, Richmond, Virginia; Charles C. Russell, Attorney at Law, Richmond, Virginia; Lloyd M. Richards, Attorney at Law, Richmond, Virginia; Earl B. Jordan, Richmond, Virginia; E. Glenn Jordan, Richmond, Virginia; and Beverly D. Jordan, Richmond, Virginia. Which majority as aforesaid shall make such appointment in writing; and until such appointment is made, the surviving Trustees shall act with full power and authority under this trust and any statement in writing or recital in the deed by the said acting Trustees shall be sufficient proof that the other Trustee has become unwilling or has declined to act. Any vacancy in the office of the said Trustees may be filled from time to time by a majority vote of the said parties indicated above as aforesaid. The said Trustees named in this deed, or either of them, shall have power to make payments to the said beneficiaries without the necessity of the other Trustees joining therein except *186 in case of a payment to a beneficiary who is also a Trustee; in which case the payment shall not be made unless the other Trustees joins or unites [sic] therein. (5) These trusts shall continue until Henry H. Coleman, the youngest beneficiary becomes 46 years of age, or in case of his death, his oldest living child becomes 23 years of age, unless by unanimous consent of the acting Trustees and also all of the beneficiaries in this trust should decide to discontinue the same. But in the event that this should occur and the acting Trustees and all of the beneficiaries should be legally competent to act and should decide to discontinue this trust, then by proper instrument in writing they shall have a right to do so and in which event the Trustees would either partition and set apart each trust to each beneficiary either by partition in kind or by the sale of the property and the distribution of the proceeds as the Trustees should determine. (6) If, however after the expiration of the period indicated the said Trustees, together with one-half of the beneficiaries of these several and separate trusts, should desire to continue these several and separate trusts for a longer period, *187 then the same shall be continued so long as the Trustees and all of the beneficiaries of five of the said several and separate trusts should wish to continue the same, but not longer than 40 years from the date of this deed. (7) In case of the death of any one or more of the following beneficiaries: Grace G. Wrenn, Nannie M. Goodwyn, Joseph R. Johnson, James W. Boisseau, Sue Shelton, Elizabeth J. Silver Then all of the rights of such beneficiaries just named who shall die as aforesaid in the said several and separate trusts shall pass over and vest in Hallie M. Goodwyn and her children, counting and including Robert A. Goodwyn as her child. But in the case of the death of any of the other beneficiaries; the right of such beneficiaries who dies [sic] as aforesaid shall pass to and vest in the issue of such beneficiary dying as aforesaid. (8) As special limitations on the powers of the said Trustees, it is further provided: a. The said Trustees shall follow as nearly as practicable the regular rules and practices usually applied in the administration of the regular traditional trusts by chancery and probate courts but shall not be limited in making investments to regular *188 statutory requirements and shall have authority to sell the said properties and re-invest [sic] the same in such securities as they may consider wise and proper and for the most efficient administration of the said several trusts and shall not be obligated in any event for any loss on any securities caused by error in judgment in any event. b. They shall not engage in any business or make or obtain any loans except so far as may be incidental and necessary for an efficient administration of the said several trusts. And that their activities shall be limited for the most part to collecting the revenue from the said properties and keeping the proceeds of the said properties re-invested [sic] and to this end they shall have a right to anticipate the said revenues in order to take advantage of opportune investments. c. The beneficiaries under the said several trusts shall have no voice or control over any of the affairs of the same. d. If the Trustees under the said several trusts shall find it more economical to do so or more convenient in the handling of the said affairs, they shall have a right to keep all the funds and properties of these trusts along with all the funds *189 and properties of any other trusts that they may have to administer and have a right to keep the same on the same books and accounts along with the funds of any other such trusts, but they shall be required and shall be expected to keep all of the said properties funds, both receipts and disbursements clear and plainly earmarked and identified so that all such funds and items can be readily and conveintly [sic] segregated at any time so that the said Trustees may be in a position to prepare a clear and concise statements, [sic] showing all receipts and disbursements on account of the said several trusts and the income, principal and other facts and particulars that may be necessary and proper for them to show. e. The said grantor hereby orders and directs that all the shares of income and principal, and that all of the payments, items and amounts for the various beneficiaries already set forth and provided shall be for the use and benefit, maintenance and support of the several and respective beneficiaries under these several trusts as already set out, and shall not be in any way or manner subject or liable to their, or either of their anticipation, sale, pledge, debts, contracts, *190 engagements or liabilities, and not subject or liable to attachment or execution or sequestration under any legal or equitable or other process. It being the intention of the grantor to take advantage of the provisions of Section 5157 of the Code of Virginia. f. The Trustees will of course be entitled to a reasonable compensation for their services, and they may find it to the benefit of the beneficiaries to use the services for the present of H. W. Goodwyn, Attorney, the grantor herein, if he is willing to serve as he is familiar with the properties and would be expected to take an active personal interest in the matter because of his affection for the beneficiaries. But of course the Trustees have full authority to use such agents or attorneys as they may see fit. By deed dated January 4, 1944, Brokerage and Realty Corp. of Richmond, Virginia, acting on behalf of the decedent as owner, transferred to Hallie M. Goodwyn, wife of the decedent, and N. B. Goodwyn, brother of the decedent, as trustees, certain additional real properties located in the City of Richmond, Virginia, and an undivided one-tenth interest to be held in trust for each of the ten beneficiaries of the trust *191 created by deed dated June 8, 1943, incorporating therein the terms and conditions of said prior trust. In addition thereto, the deed of January 4, 1944, provided as follows: a. The said Trustees shall follow as nearly as practicable the regular rules and practices usually applied in the administration of the regular traditional trusts by chancery and probate courts but shall not be limited in making investments to regular statutory requirements and shall have authority to sell the said properties and re-invest [sic] the same in such securities as they may consider wise and proper and for the most efficient administration of the said several trusts and and [sic] shall not be obligated in any event for any loss on any securities caused by error in judgment in any event. b. They shall not engage in any business or make or obtain any loans except so far as may be incidental and necessary for an efficient administration of the said several trusts, and to obtain satisfactory amortizing mortgages. And that their activities shall be limited for the most part to collecting the revenue from the said properties and keeping the proceeds of the said properties re-invested [sic] and *192 to this end they shall have a right to anticipate the said revenues in order to take advantage of opportune investments. c. The beneficiaries under the said several trusts shall have no voice or control over any of the affairs of the same. d. If the Trustees under the said several trusts shall find it more economical to do so or more convenient in the handling of the said affairs, they shall have a right to keep all the funds and properties of these trusts along with all the funds and properties of any other trusts that they may have to administer and have a right to keep the same on the same books and accounts along with the funds of any other such trusts, but they shall be required and shall be expected to keep all of the said properties funds, both receipts and disbursements clear and plainly earmarked and identified so that all such funds and items can be readily and conveniently segregated at any time so that the said Trustees may be in a position to prepare a clear and concise statements [sic], showing all receipts and disbursements on account of the said several trusts and the income, principal and other facts and particulars that may be necessary and proper for them *193 to show. It is further understood that the 10 trusts created by this instrument are separate from each other and are entirely separate from all other trusts. e. The said grantor hereby orders and directs that all the shares of income and principal and that all of the payments [sic] items and amounts for the various beneficiaries already set forth and provided shall be for the use and benefit, maintenance and support of the several and respective beneficiaries under these several trusts as already set out, and shall not be in any way or manner subject or liable to their, or either of their anticipation, sale, pledge, debts, contracts, engagements or liabilities, and not subject or liable to attachment or execution or sequestration under any legal or equitable or other process. It being the intention of the grantor to take advantage of the provisions of Section 5157 of the Code of Virginia. f. The Trustees will of course be entitled to a reasonable compensation for their services, and they may find it to the benefit of the beneficiaries to use the services for the present of H. W. Goodwyn, Attorney, the grantor herein, if he is willing to serve as he is familiar with the *194 properties and would be expected to take an active personal interest in the matter because of his affection for the beneficiaries. But of course the Trustees have full authority to use such agents or attorneys as they may see fit. g. That the said Trustees shall have the power to decide which items of moneys or properties received by them under this trust shall constitute income and which shall constitute corpus or principal and they shall also have full authority to compromize, adjust and settle any controversy that may arise in connection with any of the said trust property. h. But it is expressly understood that no Trustees under this deed or substituted Trustee, shall have any right to exercise any power of appointment of any of the said property in favor of himself, his estate, the creditors of his estate or in any manner by which such Trustee might receive any benefit from the exercise of such power. It is the intention of this deed that no property interest, either income or principal shall at any time revest or revert to the grantors herein and in the event of a complete failure of beneficiaries as already provided for any balance which might otherwise revert to *195 the grantor shall be paid to the City of Richmond and this provision shall also apply to the deed from the same grantor to the same Trustees dated June 8, 1943 and recorded in the Clerk's office, Chancery Court of the City of Richmond. Trusts created by Hallie M. Goodwyn
By deed dated December 6, 1941, Hallie M. Goodwyn, wife of the decedent, transferred to Hilton W. Goodwyn, the decedent, and N. B. Goodwyn, brother of the decedent, as trustees, certain mortgages, to be held in trust for the use and benefit of Mrs. Goodwyn's relatives. After the death of Mrs. Goodwyn, the balance of corpus and undistributed income was to be paid to the decedent, if living, and, if not, to such persons as he should appoint. In the event of the failure to make such appointment, the balance would be equally divided among Mrs. Goodwyn's children. In the event that either of the trustees should die or become disqualified or decline to act as trustee under this deed of trust, then his successor would be appointed by the majority vote of the brothers and sisters of the donor living at that time. By deed dated March 23, 1942, Hallie M. Goodwyn transferred to Hilton W. Goodwyn, the decedent, *196 and N. B. Goodwyn, the brother of the decedent, as trustee, certain mortgages to be held in trust for the use and benefit of Mrs. Goodwyn's relatives. The terms and conditions of this trust were the same as the trust of December 6, 1941. By deed dated January 2, 1943, Hallie M. Goodwyn transferred to Hilton W. Goodwyn, the decedent, and N. B. Goodwyn, the brother of the decedent, as trustees, certain mortgages, an undivided one-third interest to be held in trust for the use and benefit of Hilton W. Goodwyn, Jr., an undivided one-third interest to be held in trust for the use and benefit of Robert A. Goodwyn, and an undivided one-third interest to be held for the use and benefit of James Henderson Goodwyn, sons of the grantor. After the death of Mrs. Goodwyn, the corpus and undistributed income would be paid to the decedent, if living, and if not, to such persons as he may appoint. In the event of the failure to make such appointment, the corpus and undistributed income would be equally divided among Mrs. Goodwyn's children, adopted as well as natural, per stirpes. In the event that either of the trustees should die or become disqualified or decline to act as trustee under this *197 deed of trust, then his successor would be appointed by the majority vote of the brothers and sisters of the donor living at that time. N. B. Goodwyn, brother of the decedent, died on October 23, 1951. By document dated November 2, 1951, the then brothers and sisters of the decedent joined in appointing Lloyd M. Richards, an attorney serving as the law librarian to the Supreme Court of Appeals of Virginia, as successor trustee under the trust agreements from the decedent dated January 9, 1943, and the companion trust agreement dated January 4, 1944, and the trust agreement from Hallie M. Goodwyn dated December 6, 1941, for a period of one year from the date thereof. In an attachment thereto, Mr. Richards accepted the designation as follows: I am accepting the above trust as above indicated and for the period of one year as indicated, but with the understanding that I will have a right to resign at any time should I see fit to do so, by giving notice in writing to Mr. Glenn D. Jordan and Mrs. Grace G. Wrenn. (s) Lloyd M. Richards
Through oversight, no document was executed at that time designating Mr. Richards successor to N. B. Goodwyn as trustee of the deed of trust *198 from the decedent dated June 8, 1943, and the companion trust agreement dated January 4, 1944, or the trust agreements from Hallie M. Goodwyn dated March 23, 1942, and January 2, 1943. Notwithstanding, Mr. Richards became trustee of record of said trusts as successor to Mr. N. B. Goodwyn, deceased. As of April 1, 1956, the decedent and Hallie M. Goodwyn resigned as trustees of the trust agreements cited supra. Thereupon, Charles C. Russell, attorney at law, Richmond, Virginia, was appointed trustee for a period of one year from said date in a document bearing the signatures of the brothers and sisters of Hallie M. Goodwyn, grantor, and the brothers and sisters of H. W. Goodwyn, grantor, in accordance with the procedures prescribed in said trusts. The document, which was in the form of a letter addressed to Mr. Russell, reads as follows: Referring to the Trust Agreements as follows: 1. Trust Deed from Edna Sadler, et al. to N. B. Goodwyn and H. W. Goodwyn, Trustees dated February 15, 1943 and recorded in the Clerk's Office of the Richmond Chancery Court, Deed Book 436-A, Page 91; Also Trust Deed from Brokerage and Realty Corporation to same Trustees dated Jan. 9, 1943 Deed *199 Book 403-A Page 277; Trust Deed from same to same Trustees dated Jan. 4, 1944 and duly recorded in Clerk's Office, Richmond Chancery Court which is intended as an addition to the last mentioned Trust; Also Trust Deeds from various parties to the same Trustees separate Trust but upon the same general terms as those above stated: Also Trust Deed from Brokerage and Realty Corporation to N. B. Goodwyn and Hallie M. Goodwyn Trustees dated June 8, 1943 and addition to same dated Jan. 4, 1944 both recorded in Clerk's Office of the Richmond Chancery Court. 2. The said Deeds of Trust provide that in the case of the death or resignation or refusal to act of any of the said Trustees then a majority of the brothers and sisters of the grantors whall [sic] have a right to designate and appoint substituted Trustees in the place of such who may die or refuse to act. 3. Mr. Lloyd M. Richards has already been substituted as Trustee in the place of Mr. N. B. Goodwyn who died on the 21st [sic] of October, 1951 and Mr. H. W. Goodwyn has, as he states, because of declining years and a desire to reduce his responsibilities also resigned as the sole surviving Trustee under the Deeds of Trust indicated; *200 and Mrs. Hallie M. Goodwyn has also resigned as sole surviving Trustee under the other Deeds indicated. And in accordance with the provisions of the said Trust Deeds it now becomes our duty to name and appoint substituted Trustee [sic] in the place of the two resignations as indicated. 4. And now, therefore, we the undersigned to [sic] hereby designate and appoint you as Trustee under the said Deeds of Trust, to serve as Trustee for a period of one year from this date. Your compensation is to be $50.00 per month and you will of course have a right to resign at any time if you should find the duties burdensome. By an undated document, the fact that neither Mr. Richards nor Mr. Russell had ever been reappointed beyond their initial one-year terms was sought to be corrected. That document, bearing the signatures of all the surviving brothers and sisters of Hallie M. Goodwyn and H. W. Goodwyn, was addressed to Mr. Richards and Mr. Russell and stated: * * * it was contemplated that you gentlemen would serve until you should be replaced by the appointing authority or by other Trustees appointed in your place. This was contemplated by the appointing authority but it seems *201 that those words were overlooked in the appointing instrument. Hicks Trust
By deed dated July 15, 1960, Hallie M. Goodwyn transferred to Edgar T. Hicks, as trustee, a negotiable note made by Hallie M. Goodwyn in the face amount of $27,000. An undivided one-ninth interest was to be held for the use and benefit of decedent's sons, sisters, and grandchildren, upon the following terms and conditions: * * * Trustee shall have free and unlimited discretion to handle, use, sell, collect, invest and reinvest the said funds in such manner and in such properties as he may see fit; and to employ all necessary agents and attorneys and pay the expenses of the same out of this trust and is authorized to pay to or for the use and benefit of the said beneficiary subject only to the limitations hereinafter stated as follows: 1. He shall have full power to handle, administer, collect the revenue from all properties belonging to this trust and full power to sell and reinvest the same as already indicated and shall have power to pay out the proceeds, both principal and income to or for the benefit of the said beneficiary or his issue, if any, in case of his death, but the said Trustee shall *202 not in any event apply any part of the income of this trust to the payment of any premiums or any insurance policy on the life of the said donor, and he shall also have authority to borrow money for the purpose of this trust and pledge the securities or properties of this trust to secure the sum if he should deem it advisable to do so. The said trust shall be absolutely irrevocable in every way and no part of the principal or corpus of the said security or any income arising therefrom shall be used for or by the said Trustee for any purpose whatever for the benefit of the said donor or to discharge any obligations or duties of the said donor, and neither the said donor nor the said Trustee severally or jointly shall have any power to revoke the said trust or any part thereof or to revest or to revert any portion of the income or corpus of the said trust or any funds arising therefrom in or to the donor of the said trust. And the Trustee is authorized to delegate to any agent, attorney, or attorney in fact, that he may see fit to employ, full and complete power to execute and sign any Deed, Deed of Trust or Mortgage, conveying or mortgaging any property that the Trustee holds or *203 may hereafter acquire. But neither the said Trustee or any successor shall have any power or dominion over the said property except in a fiduciary capacity and no right to use or deal with the said trust property for his own benefit, but shall not be accountable for any loss sustained by error of judgment or discretion in acting honestly for the benefit of the said trust. 2. That he shall until Wesley Earl Goodwyn (grandson of the grantor) becomes twenty-one years of age (or the expiration of twenty-one years from his birth in case of his death) pay out of the income as well as the corpus or capital of this trust, that is to say, shall have full authority to make the payments hereinafter indicated either from the income or corpus as he may see fit and he is authorized to make payments as aforesaid from the sums arising from the said trust as aforesaid to the said beneficiary or for his or their benefit in such amounts and at such times as the said Trustee may consider proper, it being the intention of this instrument to give him full and complete powers and discretion in making such payments and no person shall have a right to question his discretion or judgment except that *204 the said payments shall be subject to the limitations set forth herein and after the expiration of said period unless continued as hereinafter indicated, the trust fund shall be distributable to the then living issue perstirpes of the original beneficiary if he were deceased. 3. It is, however distinctly understood that the said Trustee shall not at any time have any right to use any part of the funds belonging to the said trust for either the grantor of this trust or her husband; and no part of the funds of this trust shall be used by the said Trustee or paid out by him, either directly or indirectly, to discharge or reduce any obligations or indebtedness of the said grantor or her husband and that no act of the said Trustee in conjunction with the said beneficiary or the grantor in this trust shall authorize the revesting of any part of the said trust funds in the said grantor and that neither the said grantor nor her husband shall at any time or any event profit or benefit in any way from any monies or proceeds of this trust. REMOVAL AND APPOINTMENT OF TRUSTEE: 4. The right to remove, appoint and substitute a Trustee or Trustees under this trust is vested in the brothers *205 and sisters of the grantor who are Elizabeth Silver, E. Glenn Jordan, Beverly Jordan and Earl B. Jordan and the brothers and sisters of H. W. Goodwyn, who are Grace G. Wrenn and Nannie M. Goodwyn, husband of the grantor, and shall be controlled by a majority of those living at the time of such appointment, removal or substitution and if less than three living, then by a majority of the survivors and all beneficiaries under this instrument more than eighteen (18) years of age. And the said parties indicated shall have a right at any time to remove the Trustee named under this trust or any other Trustee or Trustees that may be appointed and to reappoint such succeeding Trustee or Trustees as they may see fit. The same may be done by an instrument writing either attached to this instrument or made separate from same and delivered to the grantor or any adult beneficiary of this trust or by an instrument duly acknowledged and recorded. In the event that for any reason a Court order should be necessary for the purpose of substituting any Trustee as aforesaid, such order may be entered on the petition of a majority of the brothers and sisters of the said Hallie M. Goodwyn and husband, *206 as already indicated and neither the said Trustee acting at the time of such order nor any beneficiary of this trust shall have the right to object to such petition or be required to be named as a party thereto. The Trustee named as a grantee in this trust is named and intended as a temporary Trustee, only, but shall hold the said office and perform the duties under this trust until a successor is appointed as herein indicated. 5. The said Trustee shall have full authority if he wishes to do so for a matter of convenience to keep all the proceeds, funds and property of this trust along with the funds of any trust created for the same beneficiary but he shall not be obliged to handle it so unless he wishes to do so and even if he does handle the matter as indicated, he shall have a right at any time to segregate all the funds of this trust from any other trust. It is distinctly understood, however, that if the funds of this trust should be kept and handled along with any other trust, as indicated then the Trustee shall at any time if he wishes to do so, at his option have a right to declare and allocate any payments which may have been made to the said beneficiary of trust, *207 --a right to charge the same against either the income or corpus of this trust or both until this trust is absorbed, but the said Trustee shall not be obliged to so allocate the same unless he wishes to do so. 6. It is also further provided, however, that in addition to the powers already given to the said Trustee and the limitations already imposed upon him that the additional powers are hereby given and the additional limitations are hereby imposed upon the said Trustee as indicated as follows: a. The said Trustee shall follow as nearly as practicable the regular rules and practices usually applied in the administration of the regular trusts by chancery and probate courts but shall not be limited in making investments to regular statutory requirements and shall have authority to sell any properties and reinvest the same in such securities as he may consider wise and proper and for the most efficient administration of the said trust and shall not be obligated in any event for any loss on any securities caused by error in judgment in any event.
a1. But it is expressly understood that no trustee under this deed, or substituted trustee, shall have any right to exercise any power *208 of appointment of any of the said property in favor of himself, his estate, the creditors of his estate or in any manner by which such Trustee might receive any benefit from the exercise of such power. b. He shall not engage in any business or make or obtain any loans except so far as may be incidental and necessary for an efficient administration of the said trust, and to obtain satisfactory amortizing mortgages. And that his activities shall be limited for the most part to collecting the revenue from any properties and keeping the proceeds of the said properties reinvested and to this end he shall have a right to anticipate the said revenues in order to take advantage of opportune investments. c. The beneficiary under this trust shall have no voice or control over any of the affairs of the same. And any deed, deed of trust or mortgage by the said Trustee shall pass good title to any real or personal property and no Grantees under such deed or mortgage shall be obligated to see to the application of the purchase money or borrowed money. d. If the Trustee under this trust shall find it more economical to do so or more convenient in the handling of the said affairs, he *209 shall have a right to keep all the funds and properties of this trust along with all the funds and properties of any other trusts of the same beneficiary and have a right to keep the same on the same books and accounts along with the funds of any other such trusts, but he shall be required and shall be expected to keep all of the said properties funds, both receipts and disbursements clear and plainly earmarked and identified so that all such funds and items can be readily and conveniently segregated at any time so that the said Trustee may be in a position to prepare a clear and concise statement, showing all receipts and disbursements on account of the said several trusts and the income, principal and other facts and particulars that may be necessary and proper for him to show. e. The said grantor hereby orders and directs that all the shares of income and principal and that all of the payments, items and amounts for the various beneficiaries already set forth and provided shall be for the use and benefit, maintenance and support of the beneficiary and shall not be in any way or manner subject or liable to his anticipation,-sale, pledge, debts, contracts, engagements or liabilities, *210 and not subject or liable to attachment or execution or sequestration under any legal or equitable or other process. It being the intention of the grantor to take advantage of the provisions of Section 5157 of the Code of Virginia. f. The Trustee will of course be entitled to a reasonable compensation for his services. g.That the said Trustee shall have the power to decide which items of moneys or properties received by him under this trust shall constitute income and which shall constitute corpus or principal and he shall also have full authority to compromise, adjust and settle any controversy that may arise in connection with any of the said trust property. 7. That the said Trustee shall have no right to deal in real estate and no right to purchase any real estate in Richmond or anywhere except for the following purposes: a. To protect any of the beneficiaries under this trust who might be interested in the foreclosure or private sale of properties sold to pay off securities held by such beneficiary or held by a corporation of which the said beneficiary is a substantial stockholder, it being the intention of this clause that if there should be a sale of any real estate *211 in which this beneficiary and other beneficiaries similarly situated are interested in protecting their rights, either as owners of the securities or holders of stock, that in such case, the Trustee would have a right for the said protection to buy in such properties sold as aforesaid. b. But any purchase as indicated in the preceding paragraph could only be for property to be held as an investment or for rental purposes and not any property for sale to customers; but, however, he shall have power to sell and convey good title to any property owned or that may be acquired by him as such Trustee, and provided also that the said Trustee shall not in any event pay for such property a higher price than enough to protect the interest of the beneficiary as aforesaid and shall in his discretion have full authority to permit the mortgagee to redeem the same upon such reasonable and equitable terms as he may consider proper. Edgar T. Hicks, the trustee named under this trust, died on November 22, 1961. By deed of appointment dated December 2, 1961, and recorded January 23, 1962, Simon J. Levin was duly appointed successor trustee. On the original note for $27,000, $20,075 was paid *212 by Hallie on August 27, 1960. In the years 1961 and 1962, Hallie made additional gifts of property to the Hicks trust with a reported fair market value of $82,100. In our previous decision with respect to the respondent's deficiency in the amount of the estate tax paid by the Goodwyn Estate, Estate of Hilton W. Goodwyn,T.C. Memo 1973-153, we found that the decedent had made certain gifts in contemplation of death to this trust within the meaning of section 2035. [2]
Trust Administration
From the outset until shortly before his death, the decedent exercised control over the investment and management of the trusts herein-before described, making all decisions with respect to sales and purchases of property, including transfers as between the respective trusts and other Goodwyn-related entities, and determining the income, if any, to be distributed to the beneficiaries. The actual functions performed by any of the individual trustees in relation to the attention required of these trusts was minimal. All of the records of each of the aforementioned trusts *213 were kept in the business office of the decedent and were maintained at his discretion. Separate books of account were not set up for each of the trusts. No individual accounting statements or balance sheets were prepared for any of these trusts. However, the individual transactions for each of the various trusts as well as other entities were recorded on the books of account maintained by the decedent. The income and assets of the trusts could be determined from these records. A common bank account was maintained in the names of Richards and Russell for all of the trusts for which they were trustees. The records of this account were also maintained at the decedent's office. As the occasion required, decedent had checks drawn on this account in payment of mortgages or other assets acquired for the trusts, to pay the expenses of administering the trust, and for distribution to the beneficiaries. Such checks were thereupon signed by the trustees. At other times, blank checks were signed by the trustees to be used by the decedent for such purposes. The decedent determined the amount of any distributions to the beneficiaries, and that determination was accepted without question *214 by the trustees. Up until a few years prior to the decedent's death, the beneficiaries were not aware of the existence of the trusts. In no instance did any of the individual trustees undertake any action independently of the decedent. The decedent determined what assets were to be acquired, the means of financing those acquisitions, from whom they were to be purchased, and in most, if not all, instances, the prices to be paid for them. He performed the same functions with the sale of trust assets. The decedent also controlled the making of loans between one entity and another. Besides the responsibilities he exercised over the trusts he personally created, he also managed other trusts created by his wife through powers of attorney executed to him by the respective trustees. While there was considerable self-dealing between the decedent and the trusts, there appears no basis for any claim that the decedent profited thereby. In fact, respondent's determination in this case is predicated in part upon the fact that the trusts benefited by reason of the investment of the trusts' funds and management of the trusts' properties by the decedent. The fiduciary income tax returns *215 for each of the beneficiaries were prepared at decedent's direction by his employees. The trustees would come to the office and sign those returns after they had been completed. The decedent was confined to the hospital in December 1961 with a serious operation. In May 1962 Bailey & Childress, Inc., took over the managment of the assets belonging to these trusts as well as the assets of the other Goodwyn enterprises. Bailey & Childress, Inc., is a real estate brokerage firm that specializes in providing the management required in the rental, sale and mortgaging of real property of the kind contained in these trusts. Goodwyn died testate on July 27, 1962. In the notice of deficiency for the taxable years in issue, respondent has attributed the income from the Richards and Russell Trusts and the Hicks Trust to the petitioners. Petitioners contest this determination. OPINION
Trusts created by Hilton W. Goodwyn
By deed dated January 9, 1943, the decedent caused to be transferred certain real properties to himself and N. B. Goodwyn, his brother, as trustees, to be held for the use and benefit of his three sons. By deed dated January 4, 1944, certain additional *216 properties were transferred to the decedent and his brother, as trustees, for the same purposes. Subsequently, the decedent resigned as trustee, causing Lloyd M. Richards and Charles C. Russell, attorneys at alw, to be appointed as trustees. Notwithstanding any lapses in their original appointments, it is admitted that as of the date of death of the decedent Richards and Russell were, and for some years prior thereto, had been trustees in name, if not in fact, of these trusts. Similarly, by deed dated June 8, 1943, the decedent caused to be transferred to Hallie M. Goodwyn, his wife, and N. B. Goodwyn, his brother, certain real properties to be held in trust for the use and benefit of other members of the family. By deed dated January 4, 1944, additional real properties were transferred to said trustees for the same purposes. Upon the death of N. B. Goodwyn, and the resignation of Hallie M. Goodwyn, as trustee, Richards and Russell likewise became trustees in name, if not in fact, of these trusts and were so acting upon the death of the decedent. Under the terms of the deeds creating these trusts, the trustees were granted broad discretionary powers with respect to both the *217 distribution of income to the beneficiaries and the investment and management of the corpus of the trusts. Notwithstanding the designation of Richards and Russell as trustees, it further appears that at all times from the establishment of the trusts until his last illness, with the acquiescence of the trustees, the decedent made all decisions with respect to the purchase and sale of trust assets and the investment of any proceeds and determined the amounts, if any, to be distributed to the respective beneficiaries. There is no question that Goodwyn created legally valid trusts under state law. The provisions of these trust instruments, including those regarding the rights, duties and obligations of the trustees demonstrate the grantor's intent to relinquish the ownership of the involved assets. Although many of the beneficiaries were unaware of the existence of these trusts, such notice is not a requirement for a valid trust. [3]
Regarding the effect of the Federal income tax laws on these trusts, it is not *218 contended here that the decedent reserved any right or power in any of the trusts whereby the income of these trusts could be attributed to the grantor. Additionally, it is clear that during the years in issue the trustees were not related or subordinate parties within the definition of 672(c) whose discretionary power to distribute or accumulate income to beneficiaries would attribute the income to the grantor. Rather, these trustees were independent trustees within the meaning of section 674(c), who may have such a discretionary power over income. While the record indicates that the legal formalities have been complied with, it also indicates that the designated "independent" trustees whether by agreement or otherwise, entrusted the management of the trusts' assets and the distribution of income therefrom to the sole discretion of the decedent. The decedent kept all the records, made all of the investments and decided the amount to be distributed to beneficiaries. The trustees merely acquiesced in these actions. On the basis of these facts, the judicial decisions following the Supreme Court's decision in Helvering v. Clifford,309 U.S. 331 (1940), and the *219 later so-called Clifford regulations might well warrant the attribution of the income from these trusts to the decedent. However, to the extent these previous principles are not embodied in the present statutory provisions of the Code, they must be considered no longer applicable. Section 671 provides that subpart E represents the sole criterion of dominion and control under section 61 (relating to the definition of gross income) and thereby also under the Clifford doctrine. The Report of the Committee on Ways and Means on the Internal Revenue Code of 1954 explains clearly that this exclusivity was the intent of Congress: It is also provided in this section [671] that no items of a trust shall be included in computing the income or credits of the grantor (or another person) solely on the grounds of his dominion and control over the trust under the provisions of section 61 (corresponding to sec. 22(a) of existing law). The effect of this provision is to insure that taxability of Clifford type trusts shall be governed solely by this subpart. However, this provision does not *220 affect the principles governing the taxability of income to a grantor or assignor other than by reason of his dominion and control over the trust. Thus, this subpart has no application in situations involving assignments of future income to the assignor, as in Lucas v. Earl (281 U.S. 111), Harrison v. Schaffner (312 U.S. 579), and Helvering v. Horst (311 U.S. 112), whether or not the assignment is to a trust; nor are the rules as to family partnerships affected by this subpart. [4]
Consequently, in order for a grantor to be held taxable pursuant to subpart E on the income of a trust which he has established, he must have one of the powers or retained interests proscribed by subpart E. The grantor's power to control beneficial enjoyment of either the principal or the income, within the limits defined in section 674, would result in attribution of the income to the grantor. Section 674 provides as a general rule: *221 (a) General Rule.--The grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party. * * *
Although the trustees here would not be adverse parties, section 674(c) excepts the application of the general rule in certain circumstances which are applicable here. [5]
*222 Respondent would concede that none of the provisions of the trusts in issue would give the decedent the power proscribed by this section. It is respondent's argument, however, that although grantor does not specifically have such a power, his relationship to the trust res through its management and to the administration of these trusts generally is such that he should be deemed to be a trustee, in fact, during his life. Being considered a trustee, the trustee's power under the trust agreement to distribute or accumulate the income from these trusts would then make such income attributable to him under supart E. Respondent's contention in this respect is similar to that respondent raised in the Estate of Hilton W. Goodwyn,supra. As relevant here, respondent argued in that case that the decedent should be treated as trustee, in fact, possessing such rights and powers as to cause the inclusion of the assets thereof in his gross estate under section 2036(a)(2). That section requires the inclusion in decedent's gross estate any property for which the decedent has retained the right, either alone or in conjunction with any person, to designate the persons who shall possess *223 or enjoy the property or the income therefrom. We found in that case there was no basis for such inclusion. The Supreme Court has held in United States v. Byrum,408 U.S. 125, 136-7 (1972), that the right, upon which the inclusion under section 2036(a)(2) is predicated, is "an ascertainable and legally enforceable power," reserved in the trust instrument or by some other means. See also Estate of Charles Gilman,65 T.C. 296, 316 (1975), on appeal (2d Cir., February 6, 1976). We found that Goodwyn had not retained such a right in the case of the Richards and Russell Trusts of which he was grantor. In this case, while a different test is applicable, the tests are similar in character. Where section 2036(a) uses the term "right," section 674 uses the term "power." The House Ways and Means Committee Report, cited supra, [6] in its explanation of this section uses the term power in the legal sense of having an enforceable authority or right to perform some action. The use of this term in this legal sense suggests that the power of a grantor upon which he will be taxed is a power reserved by instrument or contract creating an ascertainable and *224 legally enforceable right, not merely the persuasive control which he might exercise over an independent trustee who is receptive to his wishes. Such interpretation is also, we believe, indicated by the holding in the Byrum case. In this case, the trustees in question accepted the rights, duties and obligations granted them in the trust instruments. Regardless of the fact they had entrusted to the decedent the complete management and control of these trusts, this informal delegation did not discharge them from the legal responsibility they had as the trustees. As a matter of law, the trustees were liable and answerable for the decedent's acts on their behalf. See 2 Scott, Trusts 1388, 1391 (3rd ed., 1967); 3 Scott, Trusts 1794 (3rd ed., 1967). [7]
*225 There is nothing in the record to show that the trustees could not have undertaken exclusive control of the trust res if they had elected to do so. Whatever power Goodwyn exercised over the trust assets, administration or distribution, he did so on the trustee's behalf and not in his own right. Because of Goodwyn's failure to have a legally enforceable right, we have already held, following Byrum, that the assets of these trusts were not includable in the decedent's estate under 2036(a)(2). Since a similar legal right or power is a prerequisite under section 674(a), consistency appears to require the same decision with respect to the applicability of this section. We see no other possible decision. Section 671 precludes attributing the income to Goodwyn on any other theory of dominion and control under the definition of gross income, including the Clifford doctrine. We interpret this limitation to mean that if Goodwyn cannot be considered as a trustee, in fact, under the statutory provisions of subpart E, he cannot be considered as such by virtue of the judicial doctrines arising from the Clifford case which Congress intended to limit through the enactment of *226 subpart E. But the protection of section 671, as explained in the House Ways and Means Committee Report, cited supra, does not extend to situations involving the assignments of future income. As heretofore stated, the respondent concedes that the decedent's stewardship greatly enhanced the value of the trusts. No claim can be made that the decedent took advantage of his role as manager of the trusts and customdian of the trusts' assets. In fact, there is no record to show that the decedent ever took any compensation for his efforts. In recognition of the fact that the trusts realized substantial income as a result of the decedent's management, respondent would attribute such income to the decedent. Respondent therefore argues that there resulted, through the manipulation of the trusts, an assignment by the decedent of income attributable to his efforts, citing Lucas v. Earl,281 U.S. 111 (1930); Lyman A. Stanton,14 T.C. 217 (1950). Respondent contends that decedent enjoyed the income, which was realized as a result of his management, in that *227 the decedent determined to which beneficiaries the income would be distributed, if at all. Helvering v. Horst,311 U.S. 112 (1940). Respondent is not arguing here that any portion of the income from these trusts should be allocated to the decedent as compensation for the services provided. Rather respondent is contending that decedent should be taxed on the total amount of the trust income because his arrangements amount to no more than attempt to assign income produced by his industry, efforts, contacts and reputation through his control of the administration of the trust. According to the cases relied upon by the respondent, either capital could not have been the primary factor in the production of the trust income, as in the Stanton case, or, as in the Horst case, Goodwyn must have retained control over the capital merely assigning the income therefrom. In the Stanton case, we found that capital was a relatively unimportant factor in the production of trust income compared with the services provided the trust by the grantor-trustee. In the present case, there is little question that the capital represented by the mortgages and the real property *228 comprising the assets of these trusts was the primary factor in the production of the trust income. Goodwyn merely managed and directed the investment of that capital. His managerial role was clearly not indispensable to the production of the trust income. Shortly before Goodwyn's death the real estate firm of Bailey & Childress, Inc., took over his management of the assets of these trusts. Bailey & Childress is a firm which specializes in providing the management of mortgages and real property of the kind contained in these trusts. Respondent would concede that the income earned by these trusts was not taxable to Bailey & Childress. If this firm is willing to provide management of these assets for a reasonable fee, such a management function cannot constitute an assignment of income as alleged by respondent. Consequently, it is clear in this case that capital was the primary factor in the production of the trust income. Where income is derived from capital, tax liability for such income follows ownership. Lyman A. Stanton,supra, at 225. We have already amply discussed *229 Goodwyn's control of the trust res. As he had relinquished all legal right to the corpus of the trusts, respondent's contentions in this regard cannot be sustained. Trusts created by Hallie M. Goodwyn
By deed dated December 6, 1941, Hallie M. Goodwyn caused to be transferred certain mortgages to Hilton W. Goodwyn, the decedent, and N. B. Goodwyn, the decedent's brother, as trustees, to be held for the use and benefit of the relatives of Mrs. Goodwyn. By deed dated March 23, 1942, Hallie M. Goodwyn transferred certain additional properties to the decedent and his brother, as trustees, for the same purposes. By deed dated January 2, 1943, Hallie M. Goodwyn transferred certain properties to the decedent and his brother, as trustees, to be held for the use and benefit of her three sons. As discussed above, subsequently, the decedent's brother died and the decedent resigned as trustee, causing Mr. Lloyd M. Richards and Charles C. Russell, attorneys at law, to become trustees of these trusts as well as those created by the decedent. Similarly, by deed dated July 15, 1960, Mrs. Goodwyn transferred to Edgar T. Hicks, as trustee, certain properties for the use and benefit of *230 nine individuals who were sons, sisters and grandchildren of the decedent. After Hicks' death in 1961, Simon Levin was appointed successor trustee. Decedent managed the assets of this trust under a power of attorney from the trustees, first Hicks and later Levin, in the manner described above. In the related estate tax case, we found that the decedent made certain transfers from his own assets to the trust. Respondent argues that Mrs. Goodwyn should be taxed on the income from these trusts. This attribution is based on respondent's contention that decedent's authority and actions made him a trustee in fact of the trusts created by Mrs. Goodwyn. In this case, the decedent would be a trustee who was a related and subordinate party, as defined by section 672(c), and who had the power to control the beneficial enjoyment of the income through a power of disposition under section 674 without the approval or consent of any adverse party. Consequently, if the decedent can be considered trustee, the income of the Richards and Russell Trusts and the Hicks Trust is attributable to Mrs. Goodwyn under section 674 insofar as she is the grantor of such trusts and to the decedent insofar as *231 he is a grantor. However, in light of our finding that the decedent cannot be considered a trustee, in fact, of the trusts of which he was grantor, respondent's argument is without merit. The decedent maintained the same relationship to Mrs. Goodwyn's trusts as he maintained to those which he himself created. Consequently, our findings in regard to those trusts disposes of respondent's arguments. Decision will be entered under Rule 155. Footnotes
1. In Docket No. 170-68, respondent determined deficiencies in the Federal income tax of the Estate of Goodwyn for the taxable years ending June 30, 1963, and June 30, 1964, for the income of these trusts. Respondent now concedes that the income of the trusts is not to be attributed to the estate of the decedent for the taxable years after his death.↩
2. Unless otherwise indicated all statutory references are to the Internal Revenue Code of 1954.↩
3. Fleenor v. Hensley,121 Va. 367, 93 S.E. 582↩ (1917).
4. H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. (1954), page a212.↩
5. SEC. 674. POWER TO CONTROL BENEFICIAL ENJOYMENT * * *
(c) Exception for Certain Powers of Independent Trustees.--Subsection (a) shall not apply to a power solely exercisable (without the approval or consent of any other person) by a trustee or trustees, none of whom is the grantor, and no more than half of whom are related or subordinate parties who are subservient to the wishes of the grantor-- (1) to distribute, apportion, or accumulate income to or for a beneficiary or beneficiaries, or to, for, or within a class of beneficiaries; or (2) to pay out corpus to or for a beneficiary or beneficiaries or to or for a class of beneficiaries (whether or not income beneficiaries). * * *↩
6. H. Rept. No. 1337, supra,↩ at pages a214-216.
7. For trustee's liability upon a delegation of authority, see In Re Hartzell's Will,43 Ill. App. 2d 118, 192 N.E. 2d 697 (1963); Abrams v. United States Fidelity & Guaranty Co.,127 Wis. 579, 106 N.W. 1091 (1906); Key v. Hughes' Ex'rs,32 W. Va. 184, 9 S.E. 77 (1889); White v. Citizens Nat. Trust & Savings Bank of Los Angeles,46 Cal. App. 2d 418, 116 P.2d 117 (1941). For scope of trustee's general liability, see also Powers v. Powers,174 Va. 164, 3 S.E. 2d 162↩ (1939).