[Civ. No. 2757. Fourth Dist. Aug. 7, 1941.]

EUGENE LOREN WHITE et al., Appellants, v. CITIZENS NATIONAL TRUST AND SAVINGS BANK OF LOS ANGELES (a National Banking Association) et al., Respondents.

P. E. Cavaney for Appellants.

Cosgrove & O'Neil and Roscoe C. Andrews for Respondents.

GRIFFIN, J.—On October 3, 1929, one James White was indebted to respondent Citizens National Trust and Savings Bank of Los Angeles in the sum of $13,000, which amount was subsequently reduced by payments made thereon to the sum of $4,500. On that date he assigned and transferred certain real and personal property to respondent bank in trust, primarily for the purpose of securing that indebtedness. The trust was merely a "holding trust" during the lifetime of the trustor with no active duties imposed upon the trustee, but upon the trustor's death the trustee was to assume full management and control of the *corpus* of the trust. The purposes for which the trust was created were generally "for the security of any notes, loans or advancements made by the Trustee to the Trustor. . . . To hold title to said property with no other duties during the lifetime of the Trustor or until the revocation of this trust. . . . In the event this trust is not revoked . . . during his lifetime, any property upon

his death then subject to this trust to be held by Trustee for the benefit of the Trustor's beneficiaries herein named, said Trustee assuming full duties of the management of said property as hereinafter provided. Provided, however, it is the desire and express wish of the trustor that J. Loren White, his son, and upon his retirement or decease, Eugene Loren White, Trustor's grandson, be appointed by said trustee as agent for said property, to keep said property in good condition and repair, by proper care, inspection, repair, or otherwise, and to permit no waste or deterioration thereof, said agent aforesaid to receive a salary of $150 per month, chargeable to said trust, for his services. Said trustee shall not, however, be responsible or liable for any act of said agent in the performance of his duties aforesaid.''

As can be seen from an examination of this paragraph, upon the death of the trustor, the trustee was to assume the management of the property and hold the same for the benefit of the trustor's beneficiaries designated in the trust. This clause further provided for the appointment of J. Loren White, the trustor's son, as agent for the properties, and it was further agreed between the trustor and the trustee that the trustee should not be responsible or liable for any acts of J. Loren White incurred in the performance of his duties in and about the management of the properties. The trustee was directed to disburse the net income, after the death of the trustor, as follows: one-twelfth to Margaret White, granddaughter of the trustor, until she attains the age of 43 years; one-twelfth to Eugene Loren White, grandson, until he attains the age of 45 years; five-twelfths to J. Loren White, son, during his life, and upon his death to his wife Grace B. White, if living, or if she be dead, then to Eugene and Margaret, grandchildren; five-twelfths to Daisy Florence Smith, daughter, during her life.

Included in the trust was certain real property designated therein as parcels one to nine. Four parcels of this property were lost through foreclosure. There were included in the *corpus* of the trust a few items of personal property, but there were no items of furniture referred to therein. The trustor, James White, died on November 17, 1931. For several years immediately preceding his death, J. Loren White, his son, had assumed all the care and control of the properties, including the collection of the rents therefrom. January 5, 1931, trus-

tor, being seriously ill, assigned his beneficial interest in the trust to his son, J. Loren White. After the death of the trustor the trustee, in obedience to the express wish and desire of the said trustor, as indicated in the declaration of trust, permitted J. Loren White to continue his management of the properties and the collection of rents. Out of these collections he paid for all repairs and upkeep, as well as his salary of $150 per month. He was instructed by the trustee to report his collections and expenditures once each month. On December 16, 1931, and February 3, 1932, he turned over to the trustee the sums of $100 and $137.25 respectively. In August, 1934, the trustee furnished to appellants a purported account of the trust estate but appellants claim the account did not show the receipts by the trustee of the rents, issues and profits of the trust property since the death of the trustor, or disclose what had become of the same. The appellants Eugene Loren White and Margaret Elizabeth Murphy, née White, are the son and daughter respectively of J. Loren White, and are grandchildren of James White, trustor.

Appellants in their complaint sought an accounting and asked that the trustee be compelled to restore to the trust estate the properties that were lost through foreclosure, together with the rents, issues and profits therefrom, and in the event that the said property could not be restored to the trust estate, that the court determine the market value thereof and enter judgment for appellants in that amount. After a trial the court found that the trustee had rendered a full, complete and true accounting, which accounting showed that the appellants were not entitled to recover anything whatsoever either for themselves or for the benefit of the trust estate; that the trustee was not indebted to the appellants in any amount; that the trust estate was indebted to the trustee for the balance of principal due on its promissory note, advances, trust deeds, fees and interest, in the total sum of $11,342.70. The court further found that the allegations contained in the third separate defense to the complaint setting forth the defense of estoppel were true. Judgment upon these findings was subsequently entered by the court and this appeal is taken from that judgment. The gist of appellant's contention is that the trustee was guilty

of negligence in its supervision of J. Loren White as the agent for the various real properties constituting the trust. It is appellants' contention that their father, J. Loren White, collected the rents from the various properties, embezzled the same, and failed to account to the respondent trustee for the amounts so received, and that the trustee should be held liable for all funds not accounted for which belong to the trust estate.

Many cases are cited to the effect that a violation by a trustee of a duty which equity lays upon him, whether fraudulent or through negligence, or arising through mere oversight or forgetfulness, is a breach of trust, and the trustee may be charged with the rents, profits and income which he never in fact received, but which he might and should have received by the exercise of due and reasonable care and diligence. (*Gaver* v. *Early,* 58 Cal. App. 736 [209 Pac. 394] ; *Bone* v. *Hayes,* 154 Cal. 759 [99 Pac. 172] ; *Ellig* v. *Naglee,* 9 Cal. 683; *Hayden Plan Co.* v. *Wood,* 97 Cal. App. 1 [275 Pac. 248] ; *Saunders* v. *Webber,* 39 Cal. 287.)

Counsel for respondent have no quarrel with the authorities cited, but contend that they have no application to the instant case, and contend that the rule is that if the beneficiary seeks to surcharge a trustee for negligence the burden rests upon the beneficiary to establish such negligence, citing *Wheeler* v. *Bolton,* 92 Cal. 159, 171 [28 Pac. 558]. It is first argued that the clear and precise language of the declaration of the trust itself absolves the trustee from any liability for the acts of the agent J. Loren White, wherein it is provided that ''said trustee shall not, however, be responsible or liable for any act of said agent in the performance of his duties aforesaid.''

Respondent recognizes the general rule that such language as this applies generally to the torts of an agent committed against third persons, and that the trustor, either singly or in conjunction with the trustee, cannot in any manner limit the liability of the trustee for his torts as to third persons. (Restatement of the Law, Trusts, sec. 264, subparagraph d.) It is argued, however, that the most reasonable and logical interpretation is to construe this clause to mean that the trustee shall not be liable to the beneficiaries for any act of the agent appointed by the trustor and that the trustor has an absolute

right to limit the *rights of the beneficiaries as against the trustee,* because the only rights that the beneficiaries acquire at all are under the terms of the trust instrument itself and, consequently, they are bound by all of its terms.

 In construing this provision of the trust, the trial court in a well considered opinion said: "There is as much difference between this trust and its background of fact, on the one hand, and another and common type of trust and the factual set-up involved, on the other hand, as there is between two wills, drawn under entirely different circumstances and to accomplish entirely different purposes. . . . The primary purpose of the trust in question, in the intention of both the trustor and the trustee, was to give the trustee security for an indebtedness owing to it from the trustor. Thus it was purely a holding trust as long as the trustor lived, and the latter reserved to himself the management of the estate. Naturally that arrangement could not continue after his death, but he made as close an approach to such a continuation as possible by including in the trust agreement the provisions of paragraph 'thirdly' with respect to his son J. Loren White. What he intended to say, and what he did say, in my opinion, in effect was this: 'When I am dead, I want my son to take my place in the management of the estate and to carry on as I have done and intend to do until that event. If the trustee will execute this request, it is my direction that the responsibility for the performance of his duties will rest with my son exclusively, just as it will with me until my demise, and that the same relationship with respect to responsibility shall exist between the Trustee and my son, to the extent of his duties undertaken, as will exist between the Trustee and myself until my death.' "

It is respondent's contention that, irrespective of the provisions of the declaration of trust just referred to, the trustee was not guilty of negligence; and that the respondent trustee used ordinary care and diligence in the execution of the trust and was not guilty of any breach of trust, citing *Estate of Cousins,* 111 Cal. 441 [44 Pac. 182]; Civ. Code, sec. 2259.

 At the outset, J. Loren White, father of appellants, was not a party plaintiff. He was joined as a party defendant.

He was not served and the case was subsequently dismissed as to him. The voluminous record, when analyzed, supports respondents' argument that appellants' case is tainted with collusion and was J. Loren White's "brain child." It appears that White, himself, served a subpoena on one of the witnesses to testify on behalf of appellants. He was the main witness for them and played an active part in seeking a recovery from the respondent bank for his admitted defalcations. White, although not a party plaintiff, would, under the trust, personally profit to the extent of five-twelfths of any pecuniary benefit that might result from the litigation, as against one-twelfth for each of appellants. Is it not also strange that appellants, having a right as beneficiaries so to do, have not in this action sought a judgment against their father, J. Loren White, requiring him to pay over to the trustee the alleged misappropriated funds? Appellants were adults and lived with and were supported by White during most of the time in question. They were at all times on quite friendly terms. White testified to the receipt of rentals in the sum of $10,975, which he appropriated to his own use. He endeavored to substantiate his testimony by the production of a rent receipt record, portions of which were thoroughly established to be spurious. It contained alleged receipts for rent for certain properties for many months when in fact the property had been sold by him under the trust and no rental was paid on that property. One of the record sheets admittedly had been torn from the record book and recopied for the occasion. Under the terms of the trust the title to the furniture in the several properties was not mentioned. The trust did not refer to the furniture. Apparently J. Loren White exercised personal control over some of it at least, because he, personally, sold a portion of it without the knowledge of the trustee. ■ The foreclosures involved in the trust took place during the depression period, of which depression period the court may take judicial notice. (*Camerer* v. *California Savings & Commercial Bank of San Diego*, 4 Cal. (2d) 159 [48 Pac. (2d) 39, 100 A. L. R. 667].)

An expert witness for respondent bank testified that the reasonable and fair amount of rentals that should have been received from the properties in question, over the period of time involved, was much less than that testified to by White;

that $2,668 was the estimated operating and up-keep cost of the property and that 40 per cent of the rents received ($4,390) was the property of White because he, personally, owned the furniture; that after deducting White's allowable salary of $150 per month for 29 months ($4350) there would still be a deficiency of $433.

█ Regardless of the conflict and correctness of the amount of rentals received, under the undisputed evidence the trust was still indebted to the trustee in the sum of $11,-342.70, as an offset. The trustee, under the terms of the trust, could have at any and all times, appropriated any and all income earned by the trust in satisfaction of the bank's note and the trustee's advances. Therefore, no damages could be awarded under either estimate. █ It is evident that the trustor, the father of J. Loren White, trustee, had great confidence in his son. There was no apparent reason why the trustee should not have the same confidence in him at the time he was selected to act as agent under the terms of the trust. Appellants cannot successfully complain that respondents were negligent in selecting him as such agent. (*Donaldson* v. *Allen*, 182 Mo. 626 [81 S. W. 1151].) █ The trial court's interpretation of the trust agreement above quoted receives ample support in the record and the findings fully support the judgment as to the questions above presented.

█ Appellants next complain of the trial court's action in allowing, during the course of the trial, an amendment to the answer as a defense, i. e., that appellants were estopped, by their actions, from asserting any claim against respondent. It is argued that they were taken by surprise and were not afforded time to meet the issue then presented. There is no merit to this argument. The record shows that the trial judge, upon the filing of the amendment, stated to counsel for appellants: "if it appears at the end of this trial that you need more time I will give it to you." No request was made for any additional time. The rules of law covering such cases are so well and thoroughly settled that it seems hardly necessary to cite authorities in support thereof. (*Mills* v. *Jackson*, 19 Cal. App. 695 [127 Pac. 655]; 21 Cal. Jur. p. 205, sec. 141.)

The other objections to the claimed improper admission of testimony of the expert appraiser are equally without merit. (10 Cal. Jur. p. 963, sec. 220.)

Judgment affirmed.

Barnard, P. J., and Kelly, J., *pro tem.*, concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 2, 1941.