TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

--------------------------

|                        |   |              |
|------------------------|---|--------------|
|                        | : |              |
| OPINION                | : | No. 86-1201  |
|                        | : |              |
| of                     | : | APRIL 14, 1988 |
|                        | : |              |
| JOHN K. VAN DE KAMP    | : |              |
| Attorney General       | : |              |
|                        | : |              |
| ANTHONY S. DaVIGO      | : |              |
| Deputy Attorney General| : |              |
|                        | : |              |

----------------------------------------------------------------

THE BOARD OF ADMINISTRATION OF THE CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM has requested an opinion on the following question:

May the Board of Administration of the California Public Employees Retirement System self-insure against liability of its board members, officers and employees for breach of fiduciary duty in connection with the Public Employees Retirement Fund, by allocating Fund reserves for that purpose, without the approval of the Department of General Services?

CONCLUSION

The Board of Administration of the California Public Employees Retirement System may not self-insure against liability of its board members, officers and employees for breach of fiduciary duty in connection with the Public Employees Retirement Fund, by allocating Fund reserves for that purpose, with or without the approval of the Department of General Services.

ANALYSIS

The State Employees' Retirement Fund is a trust fund created solely for the benefit of the members and retired members of the Public Employees' Retirement System ("PERS," post) and their survivors and beneficiaries. (§ 20200.)[1] The Board of Administration of PERS ("board,"

_____

[1]Unidentified section references are to the Government Code.

post) has exclusive control of the administration and investment of the Fund. (§ 20201.) With respect to this power of administration and investment, California Constitution, article XVI, section 17, provides in part:

> ". . . the Legislature may authorize the investment of moneys of any public pension or retirement system, subject to all of the following:
>
> "(a) The assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system.
>
> "(b) The fiduciary of the public pension or retirement system shall discharge his or her duties with respect to the system solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their beneficiaries, minimizing employer contributions thereto, and defraying reasonable expenses of administering the system.
>
> "(c) The fiduciary of the public pension or retirement system shall discharge his or her duties with respect to the system with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of a like character and with like aims.
>
> "(d) The fiduciary of the public pension or retirement system shall diversify the investments of the system so as to minimize the risk of loss and to maximize the rate of return, unless under the circumstances it is clearly prudent not to do so."

Section 20205.8 provides:

> "The board and its officers and employees shall discharge their duties with respect to the system solely in the interest of the participants and beneficiaries:
>
> "(a) For the exclusive purpose of both of the following:
>
> "(1) Providing benefits to members, retired members, and their survivors and beneficiaries.
>
> "(2) Defraying reasonable expenses of administering the system.
>
> "(b) By investing with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

The present inquiry is whether the board may, without approval of the Department of General Services ("DGS," post), self-insure against liability of its board members and other fiduciary employees including investment staff resulting from the failure to exercise that degree of "care, skill, prudence, and diligence" prescribed in subdivision (c) of section 17 of article XVI of the California Constitution, and in subdivision (b) of section 20205.8.

While the definition of "insurance" is not constant, but must be construed in each case (cf. County of Shasta v. County of Trinity (1980) 106 Cal.App.3d 30, 38), in common parlance it connotes a contract whereby for a stipulated consideration one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril. (Cf. Webster's Third New Internat. Dict. (1961) p. 1173.)[2] In Estate of Barr (1951) 104 Cal.App.2d 506, 508, the court stated:

"For a contract to be one of insurance it is essential that there be hazard and a shifting of the incidence. If there is no risk, or if there be one and it is not shifted to another or others, there can be no insurance. According to the better view insurance also involves distribution of risk. (California Physicians' Service v. Garrison, 28 Cal.2d 790, 803-804.) 'Basically, insurance is a device which furnishes protection against a risk of loss by distributing the losses of the few among the many who are subject to the same risk . . . .'"

These elements of risk-shifting and risk-distributing are essential to insurance. (See 65 Ops.Cal.Atty.Gen. 189, 192 (1982).)

The term "self-insurance," being a common and accepted concept in contemporary risk management (Nabisco, Inc. v. Transport Indemnity Co. (1983) 143 Cal.App.3d 831, 836), refers essentially to the setting aside on some systematic basis of designated sums of money in a special account to provide a reserve to cover specified losses. (Cf. Webster's Third New Internat. Dict. (1961) p. 2060.) Self-insurance involves neither the shifting of loss to another, nor the distribution of a loss among a greater number. Hence, it is not, in a true sense, insurance at all. Rather, self-insurance differs from non-insurance only in that the former is a programatic or systematic means of covering one's own losses.

In more specific terms, therefore, we must consider whether the board may set aside a certain portion of the Fund in a special account reserved to satisfy any judgment against a board member, officer, or employee for a breach of that standard of care prescribed by the constitution and

---

[2]The same is defined in section 22 of the Insurance Code as ". . . a contract whereby one undertakes to indemnify another against loss, damages, or liability arising from a contingent or unknown event."

by statute.  Such a breach of fiduciary duty causing a loss to the Fund would give rise to an action at law by the beneficiaries of the Fund against the board member, officer, or employee to restore the loss.  If the resulting judgment is satisfied from the Fund's reserve account, which was initially and continues to be constituted from the Fund itself, the object and purpose of the beneficiaries to restore the loss could never be realized.  On the other hand, any recourse by the board against a member, officer, or employee to restore the depletion of the reserve account would merely reverse the process and thwart the objective of protecting the fiduciaries from personal financial responsibility for their breaches of duty.  Thus, such "self-insurance" effectively defeats any litigation to restore to the Fund the amount lost by virtue of a fiduciary breach.  Ultimately, then, we are asked whether the board may relieve its members, officers, and employees from liability for losses to the Fund due to a breach of their obligations to the Fund.

Section 11007.8, subdivision (a), provides:

"If a state agency is authorized to procure insurance, that agency may operate and administer a self-insurance program.  The agency may contract with the Department of General Services for the development and administration of a self-insurance program."

It remains to be determined whether the board is authorized to procure insurance against liability arising from a breach of fiduciary duty.  If so, section 11007.8 would appear to authorize it to self-insure against such liability, subject to any constitutional constraints.

Section 11007.4 provides in part:

"(b) . . . any state agency may, subject to Section 11007.7:

"(1) Insure itself against all or any part of any tort or inverse condemnation liability.

"(2) Insure any employee of the State against all or any part of his liability for injury resulting from an act or omission in the scope of his employment.

"(3) Insure against the expense of defending a claim against the state agency or its employee, whether or not liability exists on such claim.

"(c) The insurance authorized by this section may be provided by:

"(1) Self-insurance, which may be, but is not required to be, funded by appropriations to establish or maintain reserves for self-insurance purposes.

"(2) Insurance in any insurer authorized to transact such insurance in this State.

"(3) Insurance secured in accordance with Chapter 6 (commencing with Section 1760) of Part 2 of Division 1 of the Insurance Code.

"(4) Any combination of insurance authorized by paragraphs (1), (2) and (3).

"(d) The authority provided by this section to insure does not affect any other statute that authorizes or requires any state agency to insure against its liability or the liability of its employees.  Except as otherwise provided in Section 11007.7, no other statute limits or restricts the authority to insure under this section.  (Emphases added.)

Section 11007.7 provides in part:

"The procurement of insurance or official bonds by any state agency shall be subject to approval of the Department of General Services.  Any such procurement may, upon request of the state agency concerned, be made by the Department of General Services on behalf of such agency."

From these provisions it appears that a state agency may self-insure if it is authorized to procure insurance (§ 11007.8(a)); that a state agency is authorized to insure its employees against liability arising from their acts and omissions (§ 11007.4(b)(2)); and that the procurement of insurance is subject to approval by DGS (§§ 11007.7 & 11007.4).  Does the condition of approval attached to procurement extend as well to self-insurance?  Of course, DGS is generally responsible for approval of contracts entered into by state agencies. (Cf. § 14780.)  However, self-insurance is not predicated upon a contractual relationship with a third party.  Further, while the term "procurement" in section 11007.7 is not dispositive,[3] it is clearly distinguished in section 11007.8 from self-insurance.  Consequently, section 11007.7 does not pertain to self-insurance, and DGS approval is therefore not required.

However, a more specific provision, section 7511, was recently enacted as follows:

"Notwithstanding any other provision to the contrary:

"(a) A public retirement system may purchase insurance for its fiduciaries or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, if the insurance permits recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by the fiduciary.

---

[3]"Procurement" means "to get possession of . . . to cause to happen or be done . . . to bring about."  (Webster's Third New Internat. Dict. (1961) p. 1809.)

"(b) A fiduciary may purchase insurance to cover liability under this section from and for his or her own account.

"(c) An employer or an employee organization may purchase insurance to cover potential liability of one or more persons who serve in a fiduciary capacity with regard to an employee benefit plan." (Emphases added.)

Under this section, the board is authorized to purchase the type of insurance in question.[4] May a self-insurance program be operated and administered by the board under the auspices of section 11007.8?

Section 7511 contains a significant proviso, that the insurance authorized to be purchased must permit recourse by the insurer against the fiduciary. As previously noted, recourse is inherently inconsistent with the concept of protecting fiduciaries from liability. That personal liability is the touchstone of the fiduciary relationship in question here is not a matter of mere inference. In 58 Ops.Cal.Atty.Gen. 487, 490 (1975) we explained:

"In determining what was intended by the language used in a constitutional amendment,

"'[R]ecourse may be had, as an aid to interpretation, first to the summary prepared by the attorney general pursuant to his authority and duty "to give a true and impartial statement of the purpose of the measure." (Pol. Code, § 797) and then to the arguments for and against the measure sent to the voters and set forth in the pamphlets accompanying the sample ballots and appearing immediately following the attorney general's summary.' Carter v. Seaboard Finance Co., 33 Cal.2d 564, 580-581 (1949); see also Yosemite L. Co. v. Industrial Acc. Com., 187 Cal. 774, 781-782 (1922); Pasadena University v. Los Angeles Co., 190 Cal. 786, 791 (1923)." (Emphasis added.)

See also Board of Supervisors v. Lonergan (1980) 27 Cal.3d 855, 866; Mosk v. Superior Court (1979) 25 Cal.3d 474, 495; Amador Valley Joint Union High School District v. State Bd. of Equalization (1978) 22 Cal.3d 208, 245-246. In the argument to the voters in favor of "Proposition 21" on the sample ballot for the primary election of June 5, 1984, the following appeared:

"Proposition 21 was written to give public pension assets full constitutional protection as trust funds. It guarantees that neither the Governor nor future Legislatures will ever be able to use this money for other purposes. Proposition 21 also adopts federally tested investment safeguards to replace existing guidelines.

---

[4]The amounts necessary to pay for such insurance are appropriated from the Fund to PERS. (§ 20205.85.)

". . . . . . . . . . . . . . . . .. . . . . . . . .

"Specifically, Proposition 21:

".      Declares all assets of a public pension or retirement plan to be <u>trust funds</u>. It provides that, apart from reasonable administrative costs, the <u>only purpose</u> for which these trust assets can be used is the delivery of retirement benefits.

".      Enacts the <u>sole and exclusive purpose rule</u> which imposes on fund trustees the legal obligation to perform their duties <u>solely</u> in the interest of plan beneficiaries.

".      <u>Makes trustees personally liable</u> if they invest funds without exercising, as federal law requires, the degree of care expected <u>of a prudent person, who is knowledgeable in investment matters</u>.

".      <u>Retains the requirement that investments be diversified</u> so as to minimize risk. Instead of using current law's category approach to diversification, Proposition 21 makes diversification choices subject to the prudent person/personal liability rule.

"These four elements have proven effectiveness. They are the key parts of a federal law which safeguards the funds in over 600,000 private pension plans.

". . . . . . . . . . . . . . . . . . . . ."
(Emphases in original.)

The reference in the sample ballot argument to federal law is to the Employee Retirement Income Security Act (ERISA), title 29 United States Code section 1001 et seq. Section 1109 of the Act provides:

"(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

"(b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary."

Section 1110 provides:

"(a) Except as provided in sections 1105(b)(1) and 1105(d) of this title, any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy.

"(b) Nothing in this subpart shall preclude --

"(1) a plan from purchasing insurance for its fiduciaries or for itself to cover liability or losses occurring by reason of the act or omission of a fiduciary, if such insurance permits recourse by the insurer against the fiduciary in the case of a breach of a fiduciary obligation by such fiduciary;

"(2) a fiduciary from purchasing insurance to cover liability under this part from and for his own account; or

"(3) an employer or an employee organization from purchasing insurance to cover potential liability of one or more persons who serve in a fiduciary capacity with regard to an employee benefit plan."

Nothing in section 7511 purports to relieve a fiduciary from responsibility or liability for any responsibility. The federal act, after which section 7511 was patterned, expressly negates any such result, by declaring void as against public policy any contrary provision in an agreement or instrument. (§ 1110, subsec. (a), supra.) That a similar express negation was not carried over to the California statute is not contrapositive since such a restriction pertaining to private plans and agreements would be irrelevant in the context of a statutorily authorized public benefit plan where no such contrary provision in fact appears.

Under the concomitant provisions of section 7511, subdivisions (b) and (c), and section 1110, subsection (b)(2) and (b)(3), a fiduciary, an employer, or an employee organization may purchase insurance to cover fiduciary liability. Under subdivision (a) and subsection (b)(1), respectively, on the other hand, the benefit plan itself may purchase insurance only where recourse is permitted. Since recourse is not an aspect of self-insurance, we do not perceive a legislative intent to authorize its adoption by the Fund itself as a means of alleviating fiduciary liability. In our view, therefore, the board may not, under section 7511, operate a self-insurance program covering the liability of fiduciaries for their breaches of fiduciary duty.

However, section 11007.8, subdivision (a), <u>supra</u>, provides that if a state agency is authorized to procure insurance, it may self-insurance.  in our view, this section, as applied to section 7511 would, for the reasons set forth above, be in conflict with it.  In resolving the apparent conflict, it is first observed that section 11007.8 authorizes a "state agency," as distinguished from a special fund, to self-insure.  Further, section 7511, beginning with the words "Notwithstanding any other provision to the contrary," is later enacted (Stats.1984, ch. 1503, § 4) and pertains specifically to insurance for liability of a public retirement system occurring by reason of the act or omission of a fiduciary.  It is well established that in the event of an ostensible conflict between two state statutes, the more specific will control over the more general (<u>Mitchell</u> v. <u>County Sanitation Dist.</u> (1958) 164 Cal.App.2d 133, 144) and the later over the former (<u>City of Petaluma</u> v. <u>Pac. Tel. and Tel.Co.</u> (1955) 44 Cal.2d 284, 288).  (See 65 Ops.Cal.Atty.Gen. 11, 18 (1982).)  Consequently, the authority under section 11007.8 to self-insure where the authority to procure insurance is otherwise provided, does not extend to section 7511.  Hence, the express limitation contained in the latter section supersedes any inconsistent provision or authority relating to insurance of the type in question.  (Cf. 61 Ops.Cal.Atty.Gen. 424, 430 (1978).)

A final issue arises as to whether the allocation of Fund assets for purposes of self-insurance would be permitted by the terms of the constitutional provisions set forth at the outset, providing that retirement trust funds shall be held for the <u>exclusive purposes of providing benefits</u> to participants in the system and their beneficiaries, and <u>defraying the reasonable expenses of administration</u>. (Cal. Const., art. XVI, § 17, subd. (a).)  The contention that a reasonable expenditure from the Fund for the direct purchase of fiduciary insurance, subject to the right of recourse, would fall within the "reasonable expenses of administration" is supported by legislative interpretation inherent in the statutes discussed above.  In this regard, it may be noted that the constitutional provision was added as a Legislative Constitutional Amendment on June 5, 1984, while section 7511 (Stats. 1984, ch. 1503) was filed with the Secretary of State on September 27 of that year.  As stated in 63 Ops.Cal.Atty.Gen. 397, 399 (1980):

"There is, of course, a strong presumption in favor of the Legislature's interpretation of a provision of the Constitution.  (<u>Methodist Hosp. of Sacramento</u> v. <u>Saylor</u> (1971) 5 Cal.3d 685, 692.)  Thus, when the Constitution has a doubtful or obscure meaning or is capable of various interpretations, the construction placed thereon by the Legislature is of very persuasive significance.  (<u>California Housing Finance Agency</u> v. <u>Patitucci</u> (1978) 22 Cal.3d 171, 175; and see <u>Lundberg</u> v. <u>County of Alameda</u> (1956) 46 Cal.2d 644, 652; <u>Flood</u> v. <u>Riggs</u> (1978) 80 Cal.App.3d 138, 152.)  The courts, therefore, will not annul, as contrary to the Constitution, a statute passed by the Legislature, unless it can be said it is positively and certainly in conflict therewith.  (<u>Kaiser</u> v. <u>Hopkins</u> (1936) 6 Cal.2d 537, 540; <u>San Francisco</u> v. <u>Industrial Acc. Com.</u> (1920) 183 Cal. 273; <u>Methodist Hosp. of Sacramento</u> v. <u>Saylor</u>, <u>supra</u>.)

"On the other hand, the terms used in a constitutional amendment must be construed in the light of their meaning at the time of the adoption of the amendment, and cannot be extended by legislative definition, for such extension would, in effect,

be an amendment of the Constitution, if accepted as authoritative.  (Lucas v. County of Monterey (1977) 65 Cal.App.3d 947, 954; Forster Shipbuilding Co. v. County of Los Angeles (1960) 54 Cal.2d 450, 456; Pacific G. & E. Co. v. Industrial Acc. Com. (1919) 180 Cal. 497, 500.)  Moreover, a constitutional amendment should be construed in accordance with the natural and ordinary meaning of its words. (Amador Valley Joint Union High School Dist. v. State Bd. of Equalization (1978) 22 Cal.3d 208, 245; In re Quinn (1973) 35 Cal.App.3d 473, 482.)"

It is, of course, the duty of the courts and not the Legislature to interpret the law finally and conclusively.  (County of Sacramento v. State of California (1982) 134 Cal.App.3d 428, 433, n. 5.)

While any question as to the validity of the statute authorizing the direct purchase of fiduciary insurance is beyond the scope of this opinion, the allocation of Fund assets for purposes of self-insurance was neither contemplated by that enactment, nor is it constitutionally defensible.

It may be argued in support of the self-insurance proposal that the availability of insurance would constitute a reasonable expense of administration by attracting to the various fiduciary positions those who might not otherwise serve.  The recruitment of higher qualified personnel would in turn provide an indirect benefit to participants and beneficiaries of the system.

On the other hand, California Constitution, article XVI, section 17, subdivision (b), expressly establishes a fiduciary standard of conduct.  Under general trust principles, a violation by a trustee, whether fraudulent or through negligence, or arising through mere oversight or forgetfulness, is a breach of trust, and the trustee may be charged with the rents, profits and income which he never in fact received, but which he might and should have received by the exercise of due and reasonable care and diligence.  (White v. Citizens Nat. T. & S. Bank (1941) 46 Cal.App.2d 418, 422.)  Nor will an indemnification clause be construed to protect a trustee against his own wrongful acts in violation of the trust so as to practically relieve the trustee from every duty which would otherwise be imposed by the creation of the trust.  (Corbett v. Benioff (1932) 126 Cal.App. 772, 776.)  With respect to public officers in responsible charge of public funds, the Supreme Court observed in Stevens v. Geduldig (1986) 42 Cal.3d 24, 32:

"As this court said in Stanson v. Mott (1976) 17 Cal.3d 206, 213, '[w]e start with the general principle that expenditures by an administrative official are proper only insofar as they are authorized, explicitly or implicitly, by legislative enactment. . . .  [S]uch executive officials are not free to spend public funds for any "public purpose" they may choose, but must utilize appropriate funds in accordance with the legislatively designated purpose.'  Accordingly, a public official who controls public funds may be held personally liable to repay improperly expended funds if he has failed to exercise due care in permitting the expenditure.  (Id., at pp. 226-227.)"

In our view, the self-insurance plan would effectively impair the observation of and adherence to the constitutional standard by obviating the normal consequences of personal accountability. Any such plan rendering a fiduciary immune from personal financial accountability would be subject to constitutional challenge.

It is concluded that the board not may self-insure against liability of its board members and other employees for breach of fiduciary duty in connection with the Fund, by allocating Fund reserves for that purpose, with or without the approval of DGS.

* * * * *